UNITED STATES COURT OF INTERNATIONAL TRADE
BEFORE: STEPHEN A. VADEN, JUDGE

_____
ATLAS POWER LLC,                          :
                                          :
                                          :
            Plaintiff,                    :      Court No. 23-00084
      v.                                  :
                                          :
UNITED STATES,                            :
                                          :
            Defendant.                    :
_____:

**PLAINTIFF'S SURREPLY IN RESPONSE TO DEFENDANT'S
CROSS-MOTION FOR SUMMARY JUDGEMENT**

This civil action contests the denial of Plaintiff's protest regarding the unlawful assessment of Section 301 tariffs on four shipments of NVIDIA CMP 170 HX graphics processing units ("GPUs") imported by Atlas in 2021 ("the Subject Merchandise").

In October 2021, Atlas entered four shipments of Chinese-origin NVIDIA CMP 170HX GPUs ("the subject merchandise") from a Foreign Trade Zone ("FTZ") into the commerce of the United States through the port of Cleveland, Ohio, under cover of the following FTZ consumption entry summaries: 8GF-2000360-5 (entered 10/5/2021); 8GF-2000378-7 (entered 11/1/2021); 8GF-2000380-3 (entered 11/1/2021); and 8GF-2000384-5 (entered 11/4/2021). PSUMF ¶4; Plaintiff's Exhibit 1, Appx. 1-62.

Atlas classified the merchandise under Harmonized Tariff Schedule of the United States ("HTSUS") subheading 8473.30.1180, which provides for: "Parts and accessories (other than covers, carrying cases and the like) suitable for use solely or principally with machines of headings 8470 to 8472: Parts and accessories of the machines of heading 8471[*i.e.*, automatic data processing ("ADP") machines. Atlas further asserted that the Subject Merchandise was

1

excluded from assessments of 301 Tariffs by virtue of the retroactive approval of an exclusion from 301 Tariffs for certain merchandise classified under HTSUS 9903.88.56. See *Notice of Reinstatement of Certain Exclusions: China's Acts, Policies, and Practices Related to Technology Transfer, Intellectual Property, and Innovation*, 87 Fed. Reg. 17380 (March 28, 2022).

In its notice reinstating certain exclusions, the United States Trade Representative ("USTR") stated that it was reinstating exclusions from Section 301 Tariffs for certain merchandise, including merchandise classified under subheading 8473.30.1180 of the Harmonized Tariff Schedule of the United States ("HTSUS"), which covers, among other things, parts and accessories of automated data processing ("ADP") machines. See *Notice of Reinstatement of Certain Exclusions: China's Acts, Policies, and Practices Related to Technology Transfer, Intellectual Property, and Innovation*, 87 Fed. Reg. 17380 (March 28, 2022). USTR's notice stated that the reinstated exclusions are retroactive to October 12, 2021. In particular, "the reinstated exclusions will apply to goods entered for consumption, or withdrawn from warehouse for consumption, on or after 12:01 a.m. eastern daylight time on October 12, 2021, that are not liquidated or to entries that are liquidated, but within the period for protest described in section 514 of the Tariff Act of 1930, as amended."

In its Reply Memorandum in Support of Its Motion for Summary Judgment, Defendant for the first time asserts that none of the subject merchandise was eligible for the claimed exclusion because it was entered into the FTZ in a privileged status as required by the HTSUS provisions imposing 301 Tariffs. This assertion disregards the plain language of the notice reinstating the exclusion and is inconsistent with CBP's treatment of privileged merchandise affected by administrative actions eliminating duty liability.

As quoted above, the exclusions were reinstated as "to goods entered for consumption, or withdrawn from warehouse for consumption, on or after 12:01 a.m. eastern daylight time on October 12, 2021, that are not liquidated or to entries that are liquidated, but within the period for protest described in section 514 of the Tariff Act of 1930, as amended." This language makes no distinction between non-privileged merchandise entered for consumption from an FTZ and privileged merchandise entered for consumption from an FTZ. Also, there is no dispute that three of Plaintiff's entries were entered for consumption after October 12, 2021, and were within the period for protest of those entries. Thus, the plain language of the reinstatement authorizes an exclusion from 301 Tariffs for the merchandise covered by such entries.

The omission of a distinction in the reinstatement notice among privileged FTZ merchandise, non-privileged entries of FTZ merchandise, and entries of merchandise immediately upon importation cannot be disregarded as inadvertent because the provision imposing 301 Tariffs explicitly discussed the treatment of FTZ merchandise, requiring that merchandise potentially subject to 301 Tariffs be treated as privileged merchandise. The rule makers were clearly aware of the different kinds of entries. They chose not to treat entries of privileged FTZ merchandise differently than other kinds of entries.

Defendant's argument in this case is also inconsistent with how CBP has treated entries of privileged FTZ merchandise impacted by administrative actions affecting assessment of duties. In HQ H030656 (January 13, 2009), CBP issued a binding ruling concerning the assessment of antidumping duties on privileged FTZ merchandise when the entire antidumping duty order had been revoked retroactively. In the ruling, CBP noted that it was applying the language from 19 U.S.C. §1673(e)(B)(2), *i.e.*, merchandise entered for consumption, or withdrawn from warehouse for consumption, on or after a date certain. This is the same

language used in the order reinstating the 301 Tariff exclusions. Customs, observed with respect to privileged FTZ merchandise that: "When an antidumping duty order applies or is revoked with respect to particular merchandise depends on when the merchandise was entered, or withdrawn from warehouse, for consumption. The timing of application of an antidumping order comports with the FTZ statute because, although valuation and classification are determined upon admission to a warehouse, the assessment of antidumping duties, as with tariff quota determinations, must be based on the date of entry for consumption into the Customs territory of the United States."

> CBP granted the pending protest, stating:
>
>> The Port properly determined that MTP's entry was made when the merchandise was withdrawn from the FTZ for consumption in February 2004, and not when the merchandise was admitted into the FTZ, in privileged foreign status, on August 4, 2000. However, instructions were issued revoking the antidumping duty order covering OCTG from Mexico entered, or withdrawn from warehouse, for consumption on or after August 11, 2000. These instructions were issued after the Protest was properly and timely filed, but before the Protest was denied; therefore, CBP on its own initiative voids the Protest denial to allow reliquidation of the entry without regard to antidumping duties, pursuant to its November 5, 2007, instructions and 19 U.S.C. § 1515(d).

Likewise, in Inter-Maritime Forwarding Co. Inc. v. United States, 192 F. Supp. 631 (Cust. Ct. 1961), 1961 Cust. Ct. LEXIS 19, the Customs Court addressed the question whether quota-based tariff rates must be assessed on all privileged FTZ goods according to the prevailing rate of duty at the time the application for privileged status is made and accepted or on the tariff rate prevailing when the merchandise subject to the quota provisions is entered or withdrawn for consumption. When the application for privileged status was filed, the quota on such merchandise had not yet been filled, and the applicable rate of duty on such woolen fabrics then

4

entered into United States customs territory was 25 per centum ad valorem plus 37 1/2 cents per pound. However, when the goods were removed from the FTZ and entered for consumption, the *ad valorem* portion of the tariff had been raised to 45%. The court held, at the urging of the Government, that the applicable *ad valorem* rate was the 45% rate that prevailed at the time of entry for consumption.

In HQ H030656 and <u>Inter-Maritime Forwarding Co. Inc. v. United States</u>, the Customs Service and the Court, respectively, recognized that allowing an importer to "lock in" a tariff rate for privileged FTZ merchandise would also allow the importer to game the system. If CBP allows an importer to enter merchandise into an FTZ at a "locked in" low rate or pursuant to an exclusion from some sort of tariff, it would also allow an importer to wait until the rate subsequently increased because an exclusion expired or was revoked or the rate of duty was increased. Then the importer could enter its merchandise into the commerce of the United States at the locked in rate, giving it a significant competitive advantage compared to other importers and, in the case of 301 Tariffs, causing injury to a domestic industry that the 301 Tariffs were intended to protect.

Both HQ H030656 and the judicial decision on which it relied, <u>Inter-Maritime Forwarding Co. Inc. v. United States</u>, make clear that privileged FTZ merchandise is not immune from changes in tariff assessments made subject to the date when FTZ merchandise is accorded privileged status. As in those matters, the Court here should apply the plain language of the retroactive exclusion notice, which made the reinstated exclusions applicable to any merchandise entered for consumption, or withdrawn from warehouse for consumption, on or after October 12, 2021, without regard to whether the subject merchandise is privileged FTZ merchandise.

For the foregoing reasons, the Court should reject Defendant's assertion that the subject merchandise in this case was not eligible for the claimed exclusion because it was entered into the FTZ in a privileged status prior to October 12, 2021.

                                                Respectfully submitted,

                                                **/s/ J. Kevin Horgan**
                                                J. Kevin Horgan
                                                Merisa A. Horgan
                                                **DEKIEFFER & HORGAN, PLLC**
                                                1015 Fifteenth Street, N.W. Washington, DC 20005
                                                Tel: (202) 783-6900
                                                Fax: (202) 783-6909
                                                email: kevin.horgan@dhlaw.com

Dated: June 3, 2025                          *Counsel to Plaintiff Atlas Power, LLC*